UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

U.S. UNDERWRITERS INSURANCE COMPANY,

Plaintiff,

-against-

KENFA MADISON, LLC, JUAN ORTIZ, H&K NY
CORP., NY CONSTRUCTION WORK, INC., US
ONE CONSTRUCTION INC., and DESIGN
GROUP IN H&K, INC.,

Defendants.

**MEMORANDUM & ORDER**
**20-CV-2761 (NGG) (LB)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff U.S. Underwriters Insurance Company ("U.S. Underwriters") filed a declaratory judgment action against Defendants Kenfa Madison, LLC ("Kenfa"), Juan Ortiz, H&K NY Corp., NY Construction Work, Inc. ("NY Construction"), US One Construction Inc. ("US One"), and Design Group in H&K Inc. (Compl. (Dkt 1.)) The Complaint seeks a declaration that no insurance coverage is available to Kenfa relating to claims arising from a workplace injury to Defendant Ortiz at 204-208 Northern Boulevard, Bayside, New York 11361 (the "Insured Premises") that occurred on August 1, 2017. Before the court is Plaintiff's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (Mot. for Summ. J. ("Mot.") (Dkt. 42).) For the reasons stated below, the motion is DENIED.

## I. BACKGROUND

U.S. Underwriters began issuing commercial insurance policies to Kenfa in May 2015. (Ex. A to Proto Decl. (Dkt. 43-1) at 7.) One of these was a commercial package policy (the "Policy") effective from May 15, 2017 to May 15, 2018. (*See* Pl's. 56.1 St. (Dkt. 42-9) ¶ 2; Defs. 56.1 Resp. (Dkt. 45-7) ¶ 2.) The Policy insured two locations that at all relevant times were owned by

1

Kenfa: 45-03 204th Street, Bayside, NY 11361 and 204-08 North-
ern Boulevard, Bayside, NY 11361. (Pl's. 56.1 St. ¶¶ 1, 3; Def.'s
56.1 Resp. ¶¶ 1, 3.) The Policy contained a Commercial General
Liability Coverage Form, which explained the terms and condi-
tions of coverage, (Pl's. 56.1 St. ¶ 4; Def.'s 56.1 Resp. ¶ 4), as well
as an exclusion (the "L-500 Endorsement") that modified and ex-
cluded coverage for bodily injuries. This exclusion reads as
follows:

> (1) "Bodily injury" to any "employee", "volunteer worker",
> "temporary worker" or "casual laborer" arising out of or in
> the course of:
>
>> (a) Employment by any insured; or
>
>> (b) Performing duties related to the conduct of any in-
>> sured's business;
>
> (2) "Bodily injury" to any contractor, subcontractor, or any
> "employee", "volunteer worker", "temporary worker" or
> "casual laborer" of any contractor or subcontractor arising
> out of or in the course of the rendering or performing ser-
> vices of any kind or nature whatsoever by such contractor,
> subcontractor or "employee", "volunteer worker", "tempo-
> rary worker" or "casual laborer" of such contractor or
> subcontractor for which any insured may become liable in
> any capacity; or
>
> (3) Any obligation of any insured to indemnify or contribute
> with another because of damages arising out of such "bodily
> injury"; or
>
> ( 4) "Bodily injury" sustained by the spouse, child, parent,
> brother or sister of any "employee", "volunteer worker",
> "temporary worker" or "casual laborer" of any insured, or of
> a contractor, subcontractor, or of any "employee", "volunteer

worker", "temporary worker" or "casual laborer" of any con-
tractor or subcontractor as a consequence of any injury to
any person as set forth in (1) and (2) above.

This exclusion applies to all claims and "suits" by any person
or organization for damages because of such "bodily injury",
including damages for care and loss of services and any claim
under which any insured may be held liable under any Work-
ers' Compensation Law. "Casual laborer" means any person
providing work or materials to any insured for compensation
of any type.

(Ex. E to Proto Decl. (Dkt. 43-5) at ECF 47.)

On August 22, 2017, U.S. Underwriters received notice of a lia-
bility claim from Kenfa, explaining that Juan Ortiz, a
"[c]ontractor's [e]mployee, fell down while working at the in-
sured premises on August 1, 2017." (Pl's. 56.1 St. ¶ 6; Def's. 56.1
Resp. ¶ 6.) Ortiz's attorney later explained to U.S. Underwriters
that "Ortiz was injured when he fell from a ladder while working
at a construction site at 204-08 Northern Boulevard, Bayside,
NY." (Pl's. 56.1 St. ¶ 7; Def's. 56.1 Resp. ¶ 7.) The attorney also
told U.S. Underwriters that Ortiz's "employer is US One Con-
struction, Inc., a subcontractor at the site." (Pl's. 56.1 St. ¶ 7;
Def's. 56.1 Resp. ¶ 7.)

On August 23, 2017, U.S. Underwriters wrote to Kenfa that be-
cause Ortiz was injured as an employee or casual laborer of a
contractor, "the policy does not cover this matter" based on the
L-500 Endorsement, and that U.S. Underwriters would not "han-
dle this matter on behalf of Kenfa." (Pl's. 56.1 St. ¶ 8; Def's. 56.1
Resp. ¶ 8; *see also* Ex. 3 to Burns Aff. (Dkt. 42-4) at ECF 3-5.) In
September 2017, Ortiz's attorney sent U.S. Underwriters a cour-
tesy copy of a complaint that Ortiz intended to file against Kenfa,
H&K NY Corp., and NY Construction asserting claims for negli-
gence and violation of New York Labor Law ("NYLL") §§ 200,

240, and 241. (Pl's. 56.1 St. ¶¶ 11, 13; Def's. 56.1 Resp. ¶¶ 11, 13.) The complaint alleged that Ortiz was lawfully on the Insured Premises on August 1, 2017 when he fell from a ladder and was injured. (Pl's. 56.1 St. ¶ 12; Def's. 56.1 Resp. ¶ 12.) The complaint did not mention whether Ortiz was employed by one of the contractors or subcontractors when injured. (Pl's. 56.1 St. ¶ 14; Def's. 56.1 Resp. ¶ 14.) U.S. Underwriters then sent another letter to Kenfa on September 20, 2017 reasserting its disclaimer of coverage based on the L-500 Endorsement, (Pl's. 56.1 St. ¶ 15; Def's. 56.1 Resp. ¶ 15), but agreeing to defend Kenfa against Ortiz's claims subject to a right to seek a declaratory judgment to confirm its coverage position. (Pl's. 56.1 St. ¶¶ 16-17; Def's. 56.1 Resp. ¶¶ 16-17.)

Ortiz commenced an action in the Supreme Court of New York, County of Queens on October 16, 2017 against Kenfa, H&K NY Corp., NY Construction, Design Group in H&K, and Amko Electrical Construction and Maintenance, Inc. (the "Underlying Action"). (Pl's. 56.1 St. ¶ 19; Def's. 56.1 Resp. ¶ 19.) The complaint in the Underlying Action asserted the same allegations and claims as the courtesy copy that Ortiz's attorneys had previously given to U.S. Underwriters. (*See* Pl's. 56.1 St. ¶¶ 20-21; Def's. 56.1 Resp. ¶¶ 20-21.) Though the complaint did not reference Ortiz's employer, Ortiz filed a Verified Bill of Particulars on November 27, 2018 asserting that he was employed by US One as a "helper" at the time of the accident. (*See* Pl's. 56.1 St. ¶¶ 22-23; Def's. 56.1 Resp. ¶¶ 22-23.) Kenfa then filed a third-party complaint against US One seeking to recover damages if it were found liable for Ortiz's injuries. (*See* Pl's. 56.1 St. ¶ 24; Def's. 56.1 Resp. ¶ 24; Ex. J to Proto Decl. (Dkt. 43-11) at 3, 4.)

U.S. Underwriters initiated the instant declaratory judgment action on June 22, 2020, invoking the court's diversity jurisdiction. (Compl. ¶ 8.) Ortiz filed his Answer on September 18, 2020,

(Ortiz Answer (Dkt. 23)), and Kenfa filed an Answer on September 21, 2020, asserting fifteen affirmative defenses and four counterclaims. (Kenfa Answer (Dkt. 24).) Defendants US One, NY Construction, H&K NY Corp., and Design Group in H&K, LLC never appeared in this action and the clerk entered default against them on August 6, 2020. (Dkts. 16-19.) U.S. Underwriters now moves for summary judgment, asking the court to: 1) find that it has no duty under the Policy to defend or indemnify Kenfa against Ortiz's claims in the Underlying Action; 2) grant its request to withdraw from Kenfa's defense in the Underlying Action; and 3) provide other relief as the court deems just and proper. (Pl's. Mot. at 25.)[1]

According to U.S. Underwriters, Kenfa hired US One to perform construction and repair work at the Insured Premises and Ortiz was injured while working in his capacity as an employee of US One. (Pls.' 56.1 St. ¶¶ 25-27, 29.) U.S. Underwriters also asserts that Ortiz was employed by one of the contractors working on the Insured Premises and was injured in this capacity. (*Id.* ¶¶ 28, 30.) Kenfa admits that it hired US One to work at the Insured Premises, but states that it is unaware of the legal relationship between US One and NY Construction, (Def's. 56.1 Resp. ¶¶ 25-26)), and that Ortiz's employment status is disputed. (*Id.* ¶¶ 28-30.)

## II.  STANDARD OF REVIEW

The court's role on a motion for summary judgment "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Lionel v. Target Corp.*, 44 F. Supp. 3d 315, 318 (E.D.N.Y. 2014) (quoting

---

[1] U.S. Underwriters also previously asked for permission to file a summary judgment motion dismissing Kenfa's counterclaims but abandoned this request in its motion for summary judgment. (*See* Mot. for Pre-Motion Conf. (Dkt. 34) at 3.)

*Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006)).[2] Summary judgment is appropriate when the movant shows "that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." *Am. Empire Surplus Lines Ins. Co. v. Certain Underwriters at Lloyd's London*, No. 16-CV-5664 (AMD) (JO), 2018 WL 10456838, at *4 (E.D.N.Y. July 23, 2018) (quoting Fed. R. Civ. P. 56(a)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue of fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A genuine issue of fact cannot be established by "[c]onclusory allegations, conjecture, and speculation." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

"[T]he party opposing summary judgment must identify specific facts and affirmative evidence that contradict those offered by the moving party to demonstrate that there is a genuine issue for trial." *Certain Underwriters*, 2018 WL 10456838, at *4. If the non-movant is unable to establish that each element is at least reasonably disputed based on the evidentiary record, the motion should be granted.

## III. DISCUSSION

### A. U.S. Underwriters' Disclaimer of Coverage

The parties contest whether U.S. Underwriters properly disclaimed coverage and, if so, whether it should still be estopped from withdrawing its defense in the Underlying Action. (*See* Mot. at 21; Def.'s Opp. to Mot. ("Opp.") (Dkt. 45-8) at 14.)

Pursuant to New York Insurance Law § 3420(d), an insurer is "obligated to give written notice of a disclaimer of coverage 'as soon as is reasonably possible,' measured from the time that the

---

[2] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

6

insurer has sufficient information to disclaim coverage in good faith." *Webster ex rel. Webster v. Mount Vernon Fire Ins. Co.*, 368 F.3d 209, 216 (2d Cir. 2004) (quoting N.Y. Ins. L. § 3420(d)). A "delay occasioned by a reasonably prompt, thorough, and diligent investigation of the claim does not render the insurer's disclaimer untimely, because an investigation is often necessary to determine whether there is any basis for disclaiming coverage." *Id.* However, an insurer that fails, without good reason, "to provide the insured with timely notice of its disclaimer or denial of coverage on the basis of a policy exclusion will be estopped from disclaiming liability or denying coverage." *City of New York v. W. Heritage Ins. Co.*, 98 F. Supp. 3d 557, 565 (E.D.N.Y. 2015). "Disclaimers issued within one month are timely as a matter of law." *Am. Safety Cas. Ins. Co. v. 385 Onderdonk Ave., LLC*, 249 F. Supp. 3d 629, 635 (E.D.N.Y. 2017); *see also Century Sur. Co. v. EM Windsor Constr. Inc.*, No. 16-CV-4169 (PAE), 2017 WL 5952706, at *9 (S.D.N.Y. Nov. 29, 2017). "In addition to being timely, 'the notice of disclaimer must promptly apprise the claimant with a high degree of specificity of the ground or grounds on which the disclaimer is predicated.'" *Phila. Indem. Ins. Co. v. Yeshivat Beth Hillel of Krasna, Inc.*, No. 16-CV-5096 (NGG) (CLP), 2019 WL 499765, at *5 (E.D.N.Y. Feb. 8, 2019) (citing *W. Heritage Ins. Co.*, 98 F. Supp. 3d at 567). "An insurer's justification for denying coverage is strictly limited to the ground stated in the notice of disclaimer." *Id.* (citing *Ability Transmission, Inc. v. John's Transmission, Inc.*, 55 N.Y.S.3d 367, 368 (2d Dep't 2017)).

U.S. Underwriters sent two disclaimer letters to Kenfa, the first on August 23, 2017, (Pl's. 56.1 St. ¶ 8; Def's 56.1 Resp. ¶ 8; Ex. 3 to Burns Aff. ("Aug. Disclaimer") (Dkt. 42-4) at ECF 4), and the second on September 20, 2017. (Pl's. 56.1 St. ¶ 20; Def's 56.1 Resp. ¶ 20; Ex. 7 to Burns Aff. ("Sept. Disclaimer") (Dkt. 42-8) at ECF 3.) The August 23, 2017 disclaimer was sent one day after U.S. Underwriters learned of Ortiz's injury, and the September 20, 2017 disclaimer was sent within one month of notification.

(Pl's. 56.1 St. ¶ 6; Def's 56.1 Resp. ¶ 6.) Both were therefore timely. As to their contents, the August 23, 2017 disclaimer noted that Ortiz's claim arose from injury while performing work at the Insured Premises and denied coverage under the L-500 Endorsement. (Aug. Disclaimer at ECF 3-4.) The September 20, 2017 disclaimer also described the accident before noting that "the policy does not cover this matter, however we will agree to defend the entire complaint," and that "the L500 endorsement cited above will preclude us from paying any judgment in this loss." (Sept. Disclaimer at ECF 3, 5.) It further reserved U.S. Underwriters' right to file a declaratory judgment action to confirm its coverage position. (*Id.* at ECF 5.) Both disclaimers apprised Kenfa with a "high degree of specificity" of the grounds on which coverage was denied.[3]

Kenfa argues "[n]owhere in the letter did [U.S. Underwriters] state that it could withdraw this defense coverage," (Opp. at 14), and that "no reasonable fact finder would conclude that U.S. Underwriters' disclaimer was a reservation of rights with regard to its defense." (*Id.* at 20.) But the September 20 disclaimer plainly stated, "the policy does not cover this matter," "[w]e reserve the right to file a declaratory judgment action to have a court determination made to confirm our coverage position," and, importantly, that it "reserve[d] all of our rights under the policy."

---

[3] Kenfa also takes issue with U.S. Underwriters' use of "sophisticated insurance and legal language" in its disclaimers, and argues that Kenfa's President "did not, and should not be expected independently to, understand the difference between the legal concepts of defense and indemnification." (Opp. at 14.) This ignores the fact that both the August 23, 2017 and September 20, 2017 disclaimers were shared with Best Underwriting Agency, Inc. (Kenfa's broker) and International Underwriting Agency (Kenfa's agent). (Aug. Disclaimer at ECF 6; Sept. Disclaimer at ECF 6.) Kenfa thus had industry-specific expertise at its disposal. Kenfa's President, Ching Kuo Chiang, could have contacted either of these companies to discuss the disclaimers.

(Sept. Disclaimer at ECF 3, 5-6.) This language put Kenfa on notice that U.S. Underwriters *did* reserve the right to withdraw its coverage. Kenfa has also not pointed to language in either disclaimer representing that U.S. Underwriters would provide a defense through the conclusion of the Underlying Action.

Kenfa also takes issue with U.S. Underwriters' failure to provide notice of the right to obtain independent counsel. (Opp. at 14.) "The New York Court of Appeals has held that 'independent counsel is only necessary in cases where the defense attorney's duty to the insured would require that he defeat liability on any ground and his duty to the insurer would require that he defeat liability only upon grounds which would render the insurer liable.'" *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am.*, 599 F.3d 102, 124-25 (2d Cir. 2010) (citing *Pub. Serv. Mut. Ins. Co. v. Goldfarb*, 53 N.Y.2d 392, 401 n.* (1981)). Moreover, an insurer does not waive its right to control the insured's defense when it undertakes the duty to defend with a full reservation of rights. *See Liberty Mut. Fire Ins. Co. v. Hamilton Ins. Co.*, 356 F. Supp. 3d 326, 337 (S.D.N.Y. 2018) (citing *Law Offices of Zachary R. Greenhill P.C. v. Liberty Ins. Underwriters, Inc.*, 9 N.Y.S.3d 264, 267 (1st Dep't 2015)).

Kenfa has not provided an adequate explanation as to why there was a conflict of interest warranting provision of independent counsel. It notes that "counsel assigned to Kenfa's defense in the Ortiz Action has a conflict reporting to US Underwriters that Ortiz was an employee at Kenfa's premises[.]" (Opp. at 17.) Yet Kenfa puts forth no explanation as to how counsel created a conflict by reporting a fact in the case—Ortiz's employment status—which Ortiz specifically asserted in the Verified Bill of Particulars in the Underlying Action. (Ex. I to Proto Decl. (Dkt. 43-10) at 9.) Kenfa's vague allusion to U.S. Underwriters' "innate or otherwise potential inference with [its] counsel's independent judgment" is also not a sufficient elaboration of conflict. (Reply at 16.) Nor

does U.S. Underwriters' mere reservation of rights itself create a conflict. (*See* Opp. at 15.) This argument therefore also fails.

Kenfa finally contends that U.S. Underwriters should be estopped from denying a defense. (Opp. at 17.) Common law estoppel has been found in New York courts where (1) there was an unreasonable delay in denying coverage and (2) that delay caused prejudice to the insured. *U.S. Underwriters Ins. Co. v. Image By J & K, LLC*, 335 F. Supp. 3d 321, 340 (E.D.N.Y. 2018); *Bluestein & Sander v. Chi. Ins. Co.*, 276 F.3d 119, 122 (2d Cir. 2002). Where the insurer has initiated a defense, "prejudice is often presumed" unless the insurer "reserv[es] the privilege" to withdraw that defense. *Image By J & K*, 335 F. Supp. 3d at 340. This presumption reflects the fact that an insured, in relying on the insurer's defense, may "suffer[] the detriment of losing the right to control its own defense." *Bluestein*, 276 F.3d at 122.

Kenfa's argument for common law estoppel is inadequate. Kenfa, quoting *SPARTA Insurance Co. v. Technology Insurance Co.*, No. 15-CV-9893 (GBD), 2017 WL 4712480, at *4 (S.D.N.Y. Sept. 28, 2017), asserts that it has been harmed by loss of the right to control its defense. (Opp. at 15, 17.) But in *SPARTA*, the insurer failed to reserve its rights. 2017 WL 4712480, at *5. Here, U.S. Underwriters expressly reserved its right to disclaim coverage in both its August 23, 2017 and September 20, 2017 disclaimers, which is sufficient to preempt the presumption of prejudice under New York law. *See Gelfman v. Cap. Indem. Corp.*, 39 F. Supp. 3d 255, 273 (E.D.N.Y. 2014) ("[T]he fact that an insurer undertakes the defense of an insured . . . does not constitute a legally cognizable source of prejudice unless the representation occurred absent a reservation of rights or was such that the character and strategy of the lawsuit could no longer be altered."). And U.S. Underwriters does not explain or provide evidence of any prejudice in the first place.

Kenfa also takes issues with U.S. Underwriters agreeing to provide a defense despite having all information necessary to make a determination regarding Policy coverage. (Opp. at 17.) U.S. Underwriters claims that when it decided to defend Kenfa there were questions regarding applicability of the L-500 Endorsement because Ortiz's complaint in the Underlying Action did not identify him as an employee of a contractor or subcontractor. (Mot. at 8.) But all that is required to avoid estoppel is an express reservation of rights. *See Image By J & K, LLC*, 335 F. Supp. 3d at 340. Whether or not U.S. Underwriters was in possession of all information needed to determine coverage is of no matter.

Therefore, U.S. Underwriters properly disclaimed coverage and is not estopped from withdrawing its defense of Kenfa.

### B.   Interpreting the L-500 Endorsement

This dispute implicates both the duty to indemnify and the duty to defend. "[A]n insurer has a duty to defend whenever the allegations within the four corners of the complaint potentially give rise to a covered claim or where the insurer had actual knowledge of facts establishing a reasonable possibility of coverage." *Roman Cath. Diocese of Rockville Ctr., N.Y. v. Arrowood Indem. Co.*, No. 20-CV-11011 (VEC), 2022 WL 558182, at *4 (S.D.N.Y. Feb. 23, 2022). Thus, the "duty of an insurer to defend is broader than its duty to pay." *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 115 (2d Cir. 2005). "If the allegations of the complaint are even potentially within the language of the insurance policy, there is a duty to defend." *High Point Design, LLC v. LM Ins. Co.*, 911 F.3d 89, 95 (2d Cir. 2018) (quoting *Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y. 2d 435, 443 (2002)). "To avoid the duty to defend, an insurer must demonstrate that the allegations of an underlying complaint place that pleading solely and entirely within the exclusions of the policy and that the allegations are subject to no other interpretation." *Nat'l Fire Ins. Co. of Hartford v. E. Mishan & Sons, Inc.*, 650 F.

App'x 793, 796 (2d Cir. 2016) (Summary Order); *see also U.S. Liab. Ins. Co. v. WW Trading Co.*, No. 16-CV-3498 (CBA) (JO), 2018 WL 6344641, at *16 (E.D.N.Y. Sept. 28, 2018) ("Put another way, the duty to defend 'perdures until it is determined *with certainty* that the policy does not provide coverage.'") (quoting *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 620 (2d Cir. 2001) (emphasis in original)).

The "duty to indemnify arises only if the claim for which the insured has been judged liable lies within the policy's coverage." *Allianz Ins. Co.*, 416 F.3d at 115 (citing *Frontier Insulation Contractors, Inc. v. Merchs. Mut. Ins. Co.*, 91 N.Y.2d 169, 178 (1997)). The duty to pay is thus determined by the actual basis for the insured's liability to a third person. *Id.* "The duty to indemnify is narrower than the duty to defend, so if there is no duty to indemnify a claim, then there is no duty to defend against it." *Am. Eur. Ins. Co v. Tri State Plumbing & Heating Inc.*, No. 21-CV-725 (MKB) (PK), 2022 WL 4641628, at *6 (E.D.N.Y. Sept. 15, 2022).

"The construction of an insurance contract is ordinarily a matter of law to be determined by the court." *Sunrise One, LLC v. Harleysville Ins. Co. of N.Y.*, 293 F. Supp. 3d 317, 325 (E.D.N.Y. 2018). Under New York law, words and phrases in a contract should be given their plain meaning, and "the contract should be construed so as to give full meaning and effect to all of its provisions." *LaSalle Bank Nat'l Ass'n v. Nomura Asset Cap. Corp.*, 424 F.3d 195, 206 (2d Cir. 2005). Insurance contracts are to be strictly construed in favor of the insured and against the insurer. *U.S. Underwriters Co. v. Affordable Housing Found., Inc.*, 256 F. Supp. 2d 176, 180 (S.D.N.Y. 2003), *aff'd*, 88 F. App'x 441 (2d Cir. 2004). Contract terms are ambiguous if they are "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the

particular trade or business." *Olin Corp. v. Am. Home Assurance Co.*, 704 F.3d 89, 99 (2d Cir. 2012) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1191 (2d Cir. 1996)). If a provision of an insurance contract is ambiguous, a court may consider extrinsic evidence to ascertain the parties' intent at contract formation. *Id.* Courts resolve ambiguity in favor of the insured if extrinsic evidence fails to reveal the parties' intent. *Id.* "Where contractual language is ambiguous and subject to varying reasonable interpretations, intent becomes an issue of fact and summary judgment is inappropriate. . . . Only where the language is unambiguous may the district court construe it as a matter of law and grant summary judgment accordingly." *Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 187 (2d Cir. 2006) (quoting *Thompson v. Gjivoje*, 896 F.2d 716, 721 (2d Cir. 1990)).

"[W]hen an exclusion clause is relied upon to deny coverage, the burden rests upon the insurance company to demonstrate that the allegations of the complaint can be interpreted only to exclude coverage." *Bullseye Rest., Inc. v. James River Ins. Co.*, 387 F. Supp. 3d 273, 280 (E.D.N.Y. 2019). "Policy exclusions are to be strictly and narrowly construed and are not to be extended by interpretation or implication." *Id.*

Reduced to its relevant language, the L-500 Endorsement bars coverage for "[b]odily injury to any . . . employee . . . or casual laborer of any contractor or subcontractor arising out of . . . performing services of any kind . . . whatsoever by such contractor, subcontractor or employee, . . . or casual laborer of such contractor . . . for which any insured may become liable in any capacity." (Ex. E to Proto Decl. at ECF 47); *see also U.S. Liab. Ins. Co. v. WW Trading Co.*, 813 F. App'x 636, 640 (2d Cir. 2020) (Summary Order). Kenfa argues that "there is a question of fact as to the ambiguity of the mandatory and intentionally broad L-500 Endorsement which US Underwriters relies on" and that "the

Court must use that interpretation which is in favor [of] the insured." (Opp. at 8.)

Kenfa is correct that the Policy does not define the terms "contractor" or "subcontractor." (Opp. at 11-12.) The Second Circuit has found these terms to be ambiguous when left undefined in the *exact same policy. See U.S. Underwriters Ins. Co. v. 101-19 37th Ave., LLC*, 642 F. App'x 10, 11 (2d Cir. 2016) (Summary Order); *see also WW Trading Co.*, 813 F. App'x at 640 (finding these terms ambiguous in a similar policy). The Circuit has resolved this ambiguity in favor of insureds, as it must, reading the term "any contractor" to mean "contractors who are in privity with the insured." *Id.; see also Merchs. Mut. Ins. Co. v. Rutgers Cas. Ins. Co.*, 922 N.Y.S.2d 200, 201-02 (2d Dep't 2011) (reading a similar exclusion to not cover an injury to an employee of subcontractor working independently at the same job site).

The court agrees with this reading and the parties do not propose a different approach. U.S. Underwriters puts forth the same interpretation as the Circuit, (Mot. at 14), while Kenfa does not proffer any alternative reading of the terms "contractor" or "subcontractor." (Opp. at 11-12.) Kenfa argues that ambiguity in the L-500 Endorsement compels a result in its favor, as Kenfa reasonably believed that the Policy covered Ortiz's claim and textual ambiguities in insurance contracts must be resolved in favor of the insured. (*Id.* at 10.) But this is not how construing text works. When a court strictly construes text against an insurer, it adopts an interpretation of the text favorable to the insured. This interpretation must be *a reading of the text*. Kenfa's proffered interpretation is no such thing: it ignores the text of the L-500 Endorsement altogether and is grounded solely in subjective belief of coverage. The court will not adopt a party's subjective, atextual belief as to the contents of a contract solely because some terms within the contract are not defined. The meaning of "contractors" and "subcontractors" that the court adopts—those

in privity with the insured—is a reading of the text that the Circuit has found to be favorable to insureds, as it narrows the possible scope of the exception.[4] But ambiguity does not write the exclusion out of the contract altogether.

Courts in this circuit have otherwise not found the L-500 Endorsement, or other similar exclusions, to be ambiguous. *See Affordable Hous. Found.*, 256 F. Supp. 2d at 181 (concluding that a similar version of the L-500 Endorsement was "not ambiguous" because it "emphatically exempts from coverage bodily injury that is or could be covered by Workers Compensation"); *U.S. Underwriters Ins. Co. v. Beckford*, No. 93-CV-4272 (FB), 1998 WL 23754, at *5 (E.D.N.Y. Jan. 20, 1998) ("[T]he Employee Injury Exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case."); *614 Constr. Corp.*, 142 F. Supp. 2d at 495 ("Defendants fail to point to any ambiguities in the Employee Exclusion that would prevent its application to [the claimant]."); *U.S. Underwriters v. Roka LLC*, No. 99-CV-10136 (AGS), 2000 WL 1473607, at *4 (S.D.N.Y. Sept. 29, 2000) ("In this case, plaintiff has met its burden of demonstrating that the exclusion provision is clear and unambiguous. That provision excludes coverage for

---

[4] Kenfa's subjective belief is also not a reasonable one. Numerous cases in this circuit have granted summary judgment for insurer plaintiffs seeking declaratory judgment under various exclusions to insurance contracts. *See U.S. Underwriters Ins. Co. v. Ziering*, No. 06-CV-1130 (JFB) (WDW), 2009 WL 238562, at *5 (E.D.N.Y. Feb. 2, 2009) (citing cases); *see also Affordable Hous. Found.*, 256 F. Supp. 2d at 181-83 (applying bodily injury exclusion); *U.S. Underwriters Ins. Co. v. 614 Constr. Corp.*, 142 F. Supp. 2d 491, 494-96 (S.D.N.Y. 2001) (same). Kenfa was thus on notice that such policy exclusions existed. This is not altered by the fact that the Policy was titled "Commercial General Liability Insurance" coverage. (*See* Opp. at 10.) Kenfa still had an obligation to read the Policy to discern its contents and could not reasonably rely on the "Commercial General Liability Insurance" title for the belief that the Policy provided all "expected" coverage.

bodily injuries sustained in the course of employment by an employee of a contractor retained by the insured, where the injuries resulted from operations performed by the contractor for the insured."). Kenfa notes the First Circuit's decision in *United States Liability Insurance Co. v. Benchmark Construction Services, Inc.*, 797 F.3d 116 (1st Cir. 2015) finding the L-500 Endorsement to be ambiguous. (Opp. at 11.)[5] Courts in this circuit have, however, interpreted *Benchmark* as narrowing similar bodily injury exclusions to contractors who are in privity with the insured. *See WW Trading Co.*, 2018 WL 6344641, at *14. Again, the court agrees with this reading.

Kenfa makes three additional arguments, each of which is unavailing. First, Kenfa hints that enforcement of the L-500 Endorsement would be oppressive due to Kenfa's lack of sophistication relative to U.S. Underwriters, (Opp. at 1), and because this exclusion was "hidden." (*Id.* at 8-9.) But Kenfa was represented by a broker, Best Underwriting Agency Inc., and an agent, International Underwriting Agency, when purchasing the Policy from U.S. Underwriters. (Reply at 2; Ex. A to Proto Decl. (Dkt. 43-1) at 1-3; Ex. F to Proto Decl. (Dkt. 43-7) at 3-4.) Under New York law, an agent's knowledge is imputed to their principle, who is bound by such knowledge. *F.D.I.C. v. Mortg. Zone, Inc.*, No. 08-CV-3369 (TCP), 2010 WL 4000158, at * 4 (E.D.N.Y. Oct. 12, 2010). Kenfa therefore cannot claim that lack of sophistication renders enforcement of the Policy unjust. Next, for similar reasons, the court is not persuaded that the "L-500 Endorsement

---

[5] Kenfa also relies on *D.C. USA Operating Co. v. Indian Harbor Ins. Co.*, No. 07-CV-116 (CM), 2007 WL 945016 (S.D.N.Y. Mar. 27, 2017) in arguing that the L-500 Endorsement is ambiguous. (Opp. at 12-13.) The exclusion for environmental remediation efforts at issue in *D.C. USA Operating*, however, used vastly different language than the bodily injury exclusion at issue here. *Compare* 2007 WL 954016, at *4 *with* (Ex. E. to Proto Decl. at ECF 47.)

c[a]n only be interpreted as having intended to fraudulently in-
duce potential policyholders" into believing that they have
insurance coverage for injuries by persons working on the prem-
ises. (Opp. at 2.) Simply reading the L-500 Endorsement would
clarify any misconception about its scope. Finally, Kenfa's policy
argument about the L-500 Endorsement is also unavailing. (*Id.*
at 9-10.) Bodily injury exclusions have been upheld under New
York law for decades; enforcing such an exclusion here would
not create any greater "gap in coverage for [] personal injury
plaintiffs and property owners in New York" than already exists.
(*Id.* at 9.)

In sum, summary judgment is not precluded by textual ambiguity
in the L-500 Endorsement. The exclusion, however, only applies
to contractors in privity with the insured. *See WW Trading Co.*,
2018 WL 6344641, at *14.

### C.  Application of the L-500 Endorsement

Application of the L-500 Endorsement requires a showing that
Ortiz worked for a company in privity with U.S. Underwriters.
Kenfa contends that this burden has not been met, as there is an
unresolved question of fact as to whether it was in privity with
either contractor at issue, NY Construction or US One. (Opp. at
12.) U.S. Underwriters counters that Kenfa did, in fact, retain US
One as its general contractor. (Reply at 8-10).

But the legal relationship between Kenfa, NY Construction, and
US One is murky. The 2016 contracting agreement between the
parties, dated June 28, 2016, appears to initially have been be-
tween "Kenfa Madison LLC" and "NY Construction Work, Inc,"
though "NY Construction Work, Inc" has been crossed out and
replaced with "US One Construction Inc" in a hand-made edit
dated December 2, 2016. (*See* Ex. D to Green Cert. (Dkt. 45-4)
at 1.) Kenfa appears not to have re-signed the document when
this edit was made, (*id.*), and the enforceability of this alteration

17

is questionable. The "Hold Harmless Agreement Insurance Requirement" on the following page refers to an agreement entered into on June 28, 2016 between Kenfa Madison LLC and "N.Y. Construction, known as US One Construction." (*Id.* at 2.) This could imply that NY Construction and US One were the same company, though is not definitive proof of such.[6] Which legal entity Kenfa intended to retain through this agreement, US One or NY Construction, is unclear from the face of the document.

Nor does extrinsic evidence clarify Kenfa's intent. Mr. Chiang, Kenfa's President, stated in deposition that that his company engaged "U.S. One Construction" as a contractor to work at the Insured Premises. (Ex. F to Proto Decl. at 4-5, 7.) Later in the same deposition, however, he expressed confusion about the relationship between US One and NY Construction, suggesting that they were the same company that had undergone a name change, (*id.* at 5), and were owned by husband and wife. (*Id.* at 6-7.) A subcontracting agreement dated July 18, 2017 between US One and NY Construction further complicates the picture. (*See* Ex. P to Proto Decl. at ECF 4.) This agreement lists "NY Construction Work, Inc." as the contractor and "US One Construction Inc." as the subcontractor for "Project Kenfa Madison LLC" located at 204-08 Northern Blvd Bayside, NY 11261, the Insured Premises. (*Id.*) Yet, if Kenfa had engaged US One directly, then US One would be listed as the contractor and NY Construction would be the subcontractor. A 2017 Certificate of Insurance issued to US One does, in fact, list US One as a general contractor to Kenfa. (Ex. R to Proto Decl. (Dkt. 44-1) at 1-2.) Why US One

---

[6] US One's President, Esther Lee, stated that US One is a subcontractor for NY Construction and that 100% of its work is for NY Construction. (Ex. P to Proto Decl. (Dkt. 43-17) at ECF 9.) Though this provides insight into US One's revenues, it does not clarify its ownership structure or legal relationship to NY Construction.

is referred to as both a general contractor and a subcontractor across the two documents is unclear.

Furthermore, the signature for Hyuk Keun Hwang on behalf of NY Construction on the 2017 subcontracting agreement bears a strong resemblance to the signature for US One's representative on the 2016 contracting agreement. (*See id.*; Ex. D to Green Cert. at 1.) It is possible that Hyuk Keun Hwang is the "Kenny Huang" that Mr. Chiang described in deposition as the husband of Esther Lee who occasionally signs documents on behalf of US One. (Ex. F to Proto Decl. at 6.) The court remains perplexed as to why Mr. Hwang would sign documents for both NY Construction and US One.

All of this is to say that which party Kenfa contracted with—US One or NY Construction—and the legal relationship between these companies is not clear. While it is possible that US One or NY Construction were commonly owned, the court has not been presented with evidence that they were functionally the same company or otherwise bore the same legal liabilities. And contrary to U.S. Underwriters' assertion, it was not in privity with both contractors by virtue of them working at the Insured Premises. (Mot. at 2, 17.) U.S. Underwriters has not provided any support for this contention, (*id.*), and even contradicts it when describing in-circuit caselaw interpreting the L-500 Endorsement. (*Id.* at 19 ("[The e]xclusion did not apply because there was no privity where the injured contractor was not hired by the named insured or by any contractor hired by the named insured."); *see also* Reply at 4 (describing the L-500 Endorsement not applying in *Benchmark* because "the decorative painter had been hired separately by an architect").) Moreover, under New York law, subcontractors, unlike general contractors, are not in privity of contract with the owner of a property. *Bovis Lend Lease LMB Inc. v. GCT Venture, Inc.*, 728 N.Y.S. 2d 25, 27 (1st Dep't 2001); *E.C. Contracting, Inc. v. D.F. Pray, Inc.*, No. 19-CV-6813

19

(FB) (VMS), 2022 WL 877809, at *5 (E.D.N.Y. Jan. 12, 2022).
New York law allows for liquidation agreements to apportion li-
ability among owners, general contractors, and subcontractors,
*Morse/Diesel, Inc. v. Trinity Indus., Inc.*, 875 F. Supp. 165, 174
(S.D.N.Y. 1994), yet the 2017 subcontracting agreement be-
tween NY Construction and US One does not specify the
subcontractor's liability to the property owner. (Ex. P to Proto
Decl. at ECF 4.) Whether U.S. Underwriters was in privity with
US One or NY Construction thus remains at issue.

The parties also contest Ortiz's employment status, with Kenfa
arguing that it "is not clear that [the underling plaintiff] was ac-
tually employed at all," (Opp. at 19), and U.S. Underwriters
claiming that Ortiz was employed by or working for one of the
contractors or subcontractors retained to work at the Insured
Premises. (Mot. at 1.) In its September 20, 2017 disclaimer, U.S.
Underwriters denied policy coverage on the grounds that Ortiz
was either an "employee" or "casual laborer." (Sept. Disclaimer
at ECF 5.) Application of the L-500 Endorsement thus requires a
showing, in addition to privity, that Ortiz was either an employee
or a casual laborer of a contractor.

As to the first, the Policy defines "employee" to include "leased
worker[s]" but "does not include [] 'temporary worker[s].'"
(Sept. Disclaimer at ECF 5.) It does not provide a further expla-
nation.[7] Esther Lee, President of US One, stated that Ortiz

---

[7] Because Ortiz brings NYLL claims in the Underlying Action, the definition
of "employee" in this statute may be relevant. "A determination of whether
a worker qualifies as an employee under the [NYLL] depends upon factors
such as whether he or she (1) worked at his or her own convenience, (2)
was free to engage in other employment, (3) received fringe benefits, (4)
was on the employer's payroll, and (5) was on a fixed schedule." *Thomas
v. TXX Servs. Inc.*, 663 F. App'x 86, 89 (2d Cir. 2016) (Summary Order).
"[U]nder the NYLL, it is not significant how the parties defined the em-
ployment relationship or how the worker identified herself on tax forms."

worked at the company for only two days when the accident oc-
curred, and that he had not signed a written employment
contract or been paid. (Ex. P to Proto Decl. at ECF 2, 29.) US One
did, however, submit a Workers' Compensation claim on Ortiz's
behalf. (*Id.* at ECF 5, 7.) Lee also repeatedly referred to Ortiz as
an "employee" in a note annexed to her affidavit, (*id.* at ECF 11),
and Ortiz himself alleged that he was employed at US One at a
salary of $450 per week in the Verified Bill of Particulars in the
Underlying Action. (Ex. I to Proto Decl. at 9.)[8]

The court cannot conclude from this information that Ortiz was
a US One employee. There was no contract outlining the terms
of his employment, nor indication that the factors bearing on
classification as an "employee" under the NYLL were met.
Though Ortiz and Esther Lee both refer to Ortiz as an employee,
how a worker identifies themself is not necessarily determinative
in this inquiry. *See Martin*, 273 F. Supp. 3d at 444 (noting that a
worker's belief as to their employment status does not create an
employer-employee relationship under the NYLL). Accordingly,
whether Ortiz was US One's "employee" remains in dispute.

In the alternative, Ortiz could still be a casual laborer. The L-500
Endorsement covers "bodily injury to any contractor, subcontrac-
tor . . . or *casual laborer* of such contractor or subcontractor for

---

*Martin v. Sprint United Mgmt. Co.*, 273 F. Supp. 3d 404, 444 (S.D.N.Y.
2017).

[8] "A verified complaint is to be treated as an affidavit for summary judg-
ment purposes," so long as it is made on personal knowledge. *Colon v.
Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995), *abrogated on other grounds by
Tangreti v. Bachman,* 983 F.3d 609 (2d Cir. 2020); *see also Curtis v. Cen-
lar FSB*, 654 F. App'x 17, 20 (2d Cir. 2016) (Summary Order). Though
the Bill of Particulars was filed in a separate suit, the Underlying Action,
it was verified in that action and has been submitted to the record here
through certification. The court finds that it therefore serves the same
purpose as an affidavit.

which any insured may become liable in any capacity." (Ex. E to Proto Decl. at ECF 47 (emphasis added).) The casual laborer must be "of" the contractor or subcontractor in privity with the insured—*i.e.*, works on behalf of that contractor or subcontractor. The L-500 Endorsement goes on to define "casual laborer" as "any person providing work or materials to any insured for compensation of any type." *Id.* Reading the two sections together, the court finds that a "casual laborer" is someone who provides work or materials to an insured, by, for example, working at the insured's construction site, but who also works on behalf of a contractor or subcontractor in privity with the insured. Interpreting "casual laborer[]," in the alternative, to mean any person who provides materials to any insured, regardless of whether they work for a contractor or subcontractor in privity with the insured, would fail to give full effect to all provisions of the L-500 Endorsement. *Cf. Olin Corp.*, 704 F.3d at 99.

Evidence in the record conclusively establishes that Ortiz was working at the Insured Premises at the time of the injury. (Pl's 56.1 St. ¶ 7; Def's 56.1 Resp. ¶ 7; Ex. H to Proto Decl. (Dkt. 43-9) at ECF 7; Ex. P to Proto Decl. at ECF 10-11.) It also establishes that he was working there on behalf of US One, who had promised Ortiz compensation in return for work at the site. (Pl's 56.1 St. ¶¶ 24-25; Def's 56.1 Resp. ¶¶ 24-25; Ex. I to Proto Decl. at 9; Ex. P to Proto Decl. at ECF 12.) This is enough to show that Ortiz was a casual laborer for US One. Nonetheless, the dispute as to U.S. One being in privity with U.S. Underwriters bars summary judgment.

In sum, genuine issues of fact remain. Chief among them is whether Kenfa was in privity with NY Construction or US One. Application of the L-500 Endorsement cannot be found without a factual determination that Kenfa was in privity with the contractor that Ortiz worked for. It is also unclear whether there was an employment relationship between Ortiz and US One, yet the

22

court need not resolve this question because Ortiz was a casual laborer for US One. Still, the question of privity bars a grant of summary judgment for U.S. Underwriters.

## IV. CONCLUSION

Accordingly, U.S. Underwriters' motion for summary judgment is DENIED.


SO ORDERED.


Dated:     Brooklyn, New York
           March 2️⃣ 2023

                                    s/Nicholas G. Garaufis
                                    NICHOLAS G. GARAUFIS
                                    United States District Judge