UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
──────────────────────────────────
U.S. UNDERWRITERS INSURANCE COMPANY,

                 Plaintiff,

-against-

KENFA MADISON, LLC, JUAN ORTIZ, H&K NY CORP., NY CONSTRUCTION WORK, INC., US ONE CONSTRUCTION INC., and DESIGN GROUP IN H&K, INC.,

                 Defendants.
──────────────────────────────────

**MEMORANDUM & ORDER**
**20-CV-2761 (NGG) (LB)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff U.S. Underwriters moves this court to reconsider its March 30, 2023 Memorandum & Order (Mar. 30, 2023 M&O (Dkt. 47)) denying summary judgment, or in the alternative to certify a question from this M&O for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). (Mot. (Dkt. 48).) Defendant Kenfa Madison, LLC ("Kenfa") opposes this motion. (Opp. (Dkt. 51).) For the reasons stated below, U.S. Underwriter's motion is DENIED in both regards.[1]

### I. MOTION FOR RECONSIDERATION

#### A. Legal Standard

"A [motion for reconsideration] is not to be used as a substitute for appeal." *T.Z. v. City of New York*, 634 F. Supp. 2d 263, 268 (E.D.N.Y. 2009).[2] "In a motion for reconsideration, a party may not introduce new facts or raise new arguments that could have

---

[1] The court assumes the parties' familiarity with the facts of this matter. A more detailed description of the facts can be found in the March 30 M&O. (*See* Mar. 30, 2023 M&O at 1-5.)

[2] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

1

been previously presented to the court." *Belfiore v. Procter & Gamble Co.*, 140 F. Supp. 3d 241, 244 (E.D.N.Y. 2015). "A motion for reconsideration will only be granted on one of the following three grounds: (1) an intervening change in the law; (2) the availability of new evidence; or (3) the need to correct a clear error or prevent manifest injustice." *Id.* at 245. The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked— matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Ultimately, the decision of whether to grant a motion for reconsideration rests within the "sound discretion of the district court." *Kapsis v. Bloom*, No. 08-CV-3092 (SJF) (AKT), 2009 WL 414001, at *1 (E.D.N.Y. Feb. 17. 2009).

**B.    Analysis**

U.S. Underwriters grounds its motion in the need to correct clear error. It argues that no "New York court [has] held that there must be privity of contract between an insured property owner and a subcontractor in order for the [L-500 Exclusion] to apply" and that "[t]his court's contrary interpretation is unprecedented and an outlier amidst an otherwise cohesive body of New York jurisprudence[.]" (Mot. at 6.) But this argument misconstrues this court's decision. The court merely held that a direct, linear relationship between the insured property owner and employer of the injured party—privity—is required; not a contract between the insured and the injured party's employer, or some contractual right to sue between them. A linear relationship from the insured to the employer of the injured worker is sufficient. U.S. Underwriters appears to recognize this. (Reply (Dkt. 52) at 6 ("When a linear relationship is absent or the insured is outside the injured employee's chain of employment . . . the exclusion does not bar

2

coverage."); *id.* at 9 ("U.S. Underwriters has consistently argued that the L-500 Endorsement precludes coverage for bodily injury to an employee of a subcontractor retained by the contractor retained by the insured property owner.").)

As the terms "contractor" and "subcontractor" in the L-500 Endorsement imply, this relationship must be one *grounded in contract*. The property owner must delegate a duty to a general contractor by contract, who in turn delegates a subset of that duty to a subcontractor by contract. State and federal precedent cited in the court's March 30 M&O supports this conclusion. *See Merchs. Mut. Ins. Co. v. Rutgers Cas. Ins. Co.*, No. 100256/09, 2010 WL 1004467, *aff'd* 922 N.Y.S. 2d 200 (2d Dep't Mar. 11, 2011) ("[T]he caselaw establishes that, given the plain meaning of the exclusion, its purpose is to relieve the insurer of liability for a claim arising out of bodily injury to an employee of a contractor in privity with the insured."); *U.S. Liab. Ins. Co. v. WW Trading Co.*, No. 16-CV-3498 (CBA) (JO), 2018 WL 6344641, at *14 (E.D.N.Y. Sept. 28, 2018), *aff'd* 813 F. App'x 636 (2d Cir. 2020) ("The Court agrees with the holding of *Benchmark* that the worker-related exception applies only to bodily injuries sustained by contractors who are in privity with the insured."); *see also U.S. Liab. Ins. Co. v. Benchmark Constr. Servs., Inc.*, 797 F.3d 116, 123-25 (1st Cir. 2015). As the First Circuit articulated in *Benchmark*, this interpretation is consistent with the purpose of a commercial general insurance liability policy, which "provides coverage for liability arising out of torts to third parties, as distinguishable from injuries that befall the insured's own employees." *Id.* at 124. Establishing a direct relationship, grounded in contract, ensures that the injured employee is actually working on behalf of the property owner and is not a third party.

U.S. Underwriters attempts to write off the cases as involving an insured that was "*nowhere* within the injured employee's chain of employment." (Mot. at 5 (emphasis in original).) But this is

3

the *exact issue* that bars a grant of summary judgment here. Because the legal relationship between Kenfa Madison, NY Construction, and US One is unclear, such a chain is in dispute. U.S. Underwriters insured Kenfa, the owner of the site where the underlying injury occurred. The injured party, Juan Ortiz, was a casual laborer of US One. Which party Kenfa contracted with to perform construction services at this premises—US One or NY Construction Works—is unclear. If Kenfa retained US One directly, then a linear relationship would exist. If Kenfa contracted with NY Construction Works, who in turn retained US One, then a linear relationship would also exist. The same would be true if US One and NY Construction Works were the same company and Kenfa hired that entity. But none of these possibilities are undisputed in the evidentiary record. In this absence, the requisite linear, contractual relationship between the insured and the employer of the injured party has not been established.

The fact that Juan Ortiz was injured while working at the Insured Premises is not enough to show applicability of the L-500 Endorsement.[3] U.S. Underwriters has not provided this court with

---

[3] U.S. Underwriters takes issue with the court's citations to non-insurance cases regarding the lack of contractual privity between property owners and subcontractors under New York law. (Mot. at 6-7.) These cases were included to illustrate that U.S. Underwriter's contention that "Kenfa Madison, as the property owner, is in privity with all contractors and subcontractors working at the site," (Mot. f. Summ. J. (Dkt. 42-10) at 1-2), was unfounded in New York law. These cases provide insight into the existence of certain duties between property owners and subcontractors under New York law; that they are not in the insurance context is of no matter. Looking solely to the insurance context, as U.S. Underwriters insists, does not strengthen its claim that Kenfa is in privity with *all* contractors and subcontractors working at the site. The same assertion has been expressly rejected in insurance matters. *See Merchs. Mut. Ins. Co.*, 2010 WL 1004467 (concluding that a similar provision was not so expansive as to cover all "employee[s] of any contractor at the site" or "worker[s] performing work at the site"); *WW Trading Co.*, 2018 WL 6344641, at *14

*any* caselaw in briefing its motion for summary judgment or motion for reconsideration that suggests the contrary. To the extent that U.S. Underwriters believes that some form of "non-contractual privity" is "sufficient to preclude coverage," based on Juan Ortiz working at the Insured Premises on behalf of some employer, (Reply at 7), it must provide support for this contention. It has still not done so.

U.S. Underwriters also contends that the court overlooked several on-point decisions finding similar liability exclusions to be applicable in alike situations. (Mot. at 1.) The court notes at the outset that its original decision cited two of these cases. (*See* March 30 M&O at 15.) In any event, the court's non-reliance on U.S. Underwriters' citations was intentional. The three cases—*U.S. Underwriters Ins. Co. v. Congregation Kollel Tisereth, TZVI*, No. 99-CV-7398 (DGT), 2004 WL 2191051 (E.D.N.Y. Sept. 30, 2004), *U.S. Underwriters Ins. Co. v. Affordable Hous. Found., Inc.*, 256 F. Supp. 2d 176 (S.D.N.Y. 2003), and *U.S. Underwriters Ins. Co. v. Beckford*, No. 93-CV-4272 (FB), 1998 WL 23754 (E.D.N.Y. Jan. 20, 1998)—are postdated by federal precedent requiring privity between the insured property owner and subcontractor that employed the injured party. *See, e.g., WW Trading Co.*, 2018 WL 6344641, at *14. The court finds this more recent precedent persuasive. The three cases on which U.S. Underwriters relies are also not inconsistent with the court's conclusion. In *Congregation Kollel Tisereth, TZVI*, there was privity between the insured and the employee of the injured party. 2004 WL 2191051, at *5 ("[T]he [insured] retained Empire Concrete to perform demolition work on their property, which was an operation performed for the [insured's] benefit; Empire Concrete hired Ramon Acosta

---

(rejecting an argument that a bodily injury exclusion applied because the injured party "was employed by a contractor hired to do construction work at the warehouse . . . [that] related to the conduct of any insured's business").

5

to perform the actual demolition; and one of Acosta's employees, Meneses, who was hired for that project, injured himself and became the underlying claimant."). The same was true in *Affordable Housing Foundation*, 256 F. Supp. 2d at 179 ("The endorsement could not be clearer—the policy does not cover bodily injury as a result of work-related accidents, whether to employees of the named insureds or to the employees of contractors employed by the named insureds."), and *Beckford*, 1998 WL 23754, at *1, *3 (applying a similar exclusion where a clear line of contractual relations existed between the insured property owner and the subcontractor who hired the injured employee).

The court thus sees no clear error in its conclusion that the L-500 Endorsement only applies to contractors in privity with the insured, nor that the evidentiary record showed a genuine dispute as to whether such privity existed. (March 30, 2023 M&O at 17.)[4] Accordingly, U.S. Underwriters' motion for reconsideration is DENIED.

## II. MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL

### A. Legal Standard

Section 1292(b) provides a rare exception to the final judgment rule, which generally prohibits piecemeal appeals, for intermediate appeals that may avoid protracted litigation. *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996). "Only exceptional circumstances will justify a departure from the basic policy of postponing appellate review until after the entry of final a judgment." *In re Air Crash at Georgetown, Guyana on July 30,*

---

[4] U.S. Underwriters notes several instances in the March 30, 2023 M&O where the court incorrectly referred to U.S. Underwriters when intending to denote Kenfa. (Mot. at 7.) These instances were indeed misstatements. The court intended to refer to Kenfa when discussing privity with US One and NY Construction. The court has uploaded a revised version of the March 30, 2023 M&O to the docket with these misstatements corrected. (*See* Dkt. 56.) They do not, however, alter the court's conclusion.

6

*2011*, 33 F. Supp. 3d 139, 154 (E.D.N.Y. 2014). A district court can certify a non-final order in a civil case for interlocutory appeal if it finds that the "order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation[.]" 28 U.S.C. § 1292(b); *see also Batalla Vidal v. Nielsen*, No. 16-CV-4756 (NGG) (JO), 2018 WL 10127043, at *1 (E.D.N.Y. Apr. 30, 2018). The court need only identify one controlling question of law that satisfies § 1292(b) to certify the entire order for appeal. *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 391-92 (2d Cir. 2008).

Certification under § 1292(b) is proper only where the order at issue: 1) involves a controlling question of law; 2) as to which there is a substantial ground for difference of opinion; and 3) an immediate appeal may materially advance the ultimate termination of the litigation. *United States ex rel. Quartararo v. Cath. Health Sys. of Long Island Inc.*, 521 F. Supp. 3d 265, 273 (E.D.N.Y. 2021) (quoting § 1292(b)). Once all three elements of § 1292(b) are met, certification is a matter of discretion for the district court. *In re Roman Cath. Diocese of Albany, N.Y., Inc.*, 745 F.3d 30, 36 (2d Cir. 2014).

### B. Analysis

U.S. Underwriters frames the question for certification as "whether there must be contractual privity between an insured property owner and a subcontractor for an employer's liability exclusion such as the L-500 Endorsement to apply." (Reply at 8.) It argues that all three elements under § 1292(b) are met in regard to this question. (*Id.* at 7-9).

The court disagrees. Neither the first nor second elements of § 1292(b) have been met. "While the meaning of a contract generally is considered to be a question of law for the court, a question of contract interpretation typically is not a 'controlling question of law' that serves as a basis for interlocutory appeal." *Certain*

*Underwriters at Lloyd's, London v. Drennan*, No. 20-CV-1645 (LJL), 2020 WL 1816198, at *3 (S.D.N.Y. Apr. 10, 2020); *see also Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000). U.S. Underwriters seeks to certify a question regarding the interpretation of the L-500 Endorsement. Such is not a question of law for purposes of § 1292(b).

U.S. Underwriters has also not demonstrated that a substantial ground for difference of opinions exists. This element is met when the question presented is "particularly difficult and of first impression for the Second Circuit," or "there is conflicting authority on the issue." *See Quartararo*, 521 F. Supp. 3d at 277. Conflicting authority entails more than a "simple disagreement[.]" *Garber v. Office of the Comm'r of Baseball*, 120 F. Supp. 3d 334, 337 (S.D.N.Y. 2014). The applicability of the L-500 Endorsement is plainly not a matter of first impression in this Circuit. This route to showing a substantial ground for difference of opinion is thus foreclosed. U.S. Underwriters has also not shown the requisite conflicting authority on the issue. "Granting interlocutory appeal in every case where a party can cite to a few cases for their position would transform the procedure into a vehicle for a second bite at an appeal wherever there is a difficult issue, a function for which it was obviously not intended." *Hermès Int'l v. Rothschild*, 590 F. Supp. 3d 647, 656 (S.D.N.Y. 2022). Here, U.S. Underwriters has done no more than this. It again calls attention to the handful of cases that it repeatedly cites throughout its brief and contends they conflict with the court's March 30, 2023 decision. (*See* Mot. at 10.) It provides no further survey of caselaw whatsoever. Moreover, as noted, above U.S. Underwriters has misconstrued the court's March 30, 2023 decision and appears to agree on the need to show a direct, linear relationship. A substantial ground for difference of opinion has thus not been shown.

U.S. Underwriter's motion for interlocutory appeal is thus DENIED. Because the court denies certification for interlocutory appeal, there is no need to stay the pendency of the action.

### III. CONCLUSION

U.S. Underwriter's motion is thus DENIED in both regards.

SO ORDERED.

Dated:   Brooklyn, New York
         August 28, 2023

                                        s/Nicholas G. Garaufis
                                        _____
                                        NICHOLAS G. GARAUFIS
                                        United States District Judge

9